IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                      PLAINTIFF/RESPONDENT

v.                           Civil No. 20-5030
                             Criminal No. 18-50085-001

CARLOS PACHECO                                                DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On October 11, 2019, Defendant/Movant Carlos Pacheco (hereinafter "Defendant") filed a *pro se* Motion to Request All Sealed Documents. (Doc. 30). In this Motion, Defendant stated that he requested his appointed attorney, Mr. Charles Pearce, to file a notice of appeal, but one was never filed. The Court directed Mr. Pearce to respond to the Motion. (Doc. 34). Mr. Pearce filed a Response on October 29, 2019. (Doc. 35).

By Order dated November 5, 2019, the Court appointed Assistant Federal Public Defender Joe Alfaro to consult with the Defendant and determine whether the filing of a 28 U.S.C. § 2255 motion was appropriate based on Defendant's assertion regarding Mr. Pearce's failure to file an appeal. (Doc. 36). Mr. Alfaro was directed to file a status report advising the Court as to whether or not he believed the filing of a § 2255 motion was warranted. The status report was filed on January 6, 2020. (Doc. 40). After reviewing the status report, by Order dated January 7, 2020, the Court directed Mr. Alfaro to file a 28 U.S.C. § 2255 motion. (Doc. 41).

On February 6, 2020, the Defendant filed the 28 U.S.C. § 2255 Motion, asserting ineffective assistance of counsel for failure to appeal. (Doc. 44). On March 9, 2020, the United

1

States ("Government") filed a Response.

## I. Background

On January 29, 2018, Defendant was arrested for charges in a separate criminal case wherein Defendant was charged with conspiracy to distribute methamphetamine and using a communication device to facilitate the commission of the conspiracy to distribute methamphetamine. United States v. Pacheco, No. 5:18-cr-50011-001 (W.D. Ark. Jan. 23, 2018). Defendant retained Ms. Kimberly Weber to represent him in this case. On August 10, 2018, a mistrial was declared after a trial which resulted in a deadlocked jury. (Doc. 42.)

On October 17, 2018, Defendant was named in a Three-Count Indictment that is the subject of the instant § 2255 motion.. (Doc. 1). Counts One and Two charged Defendant with fraud and misuse of visas, permits, and other documents, in violation of Title 18 U.S.C. § 1546(a). Id. Count Three charged Defendant with making false declarations before a grand jury or court, in violation of Title 18 U.S.C. § 1623(a). Id. Defendant was arrested on these charges on October 18, 2018, and Mr. Pearce was appointed to represent the Defendant on these charges on October 19, 2018. On November 26, 2018, pursuant to a written plea agreement, Defendant pled guilty to Counts Two and Three. (Doc. 15). On April 15, 2019, the District Court sentenced Defendant to sixty-eight months on Count Two, and sixty months on Count Three, to run concurrently; three years of supervised release on each count, to run concurrently; a $400.00 fine; and a $200 special assessment. (Doc. 28). At the sentencing hearing, the Government moved to dismiss the Indictment in Case No. 18-50011, and the Court granted this motion. (Doc. 77.) The Defendant did not appeal his conviction or sentence in the instant case.

On October 11, 2019, Defendant filed a motion to request all sealed documents from the case docket. (Doc. 30). Defendant asserted that after his April 15, 2019 sentencing, he requested that his attorney file a notice of appeal but a notice was never filed. Defendant asserted that he had requested his entire case file from his attorney and that he never received a response.

On October 29, 2019, Mr. Pearce, at the Court's direction, filed a response. (Doc. 35). Mr. Pearce stated that prior to Defendant's sentencing he met with Defendant and discussed the constitutional right to appeal and that the decision to appeal would need to be made quickly after the sentencing. Mr. Pearce stated that at this pre-sentencing meeting, he made Defendant aware of the circumstances warranting an appeal. According to Mr. Pearce, Defendant stated at that time that he did not want to appeal. Mr. Pearce stated that immediately after the sentence was handed down and before leaving the courtroom, Defendant again stated he did not want to appeal. Mr. Pearce stated that between April 15, 2019, and April 25, 2019, neither Defendant nor his family reached out to request a meeting or to file an appeal. Mr. Pearce stated that he went to the Washington County Detention Center on April 25, 2019, to meet with Defendant but learned that day that Defendant had already been transferred. Mr. Pearce stated that he believed based on his previous conversations with Defendant that Defendant had no desire to appeal. Mr. Pearce stated that since Defendant's transfer, Defendant had been in touch, as had Defendant's family, and at no time had Defendant or his family expressed a desire to appeal.

In his § 2255 motion, Defendant asserts ineffective assistance of counsel. (Doc. 44). Defendant asserts that he directed Mr. Pearce to file an appeal and that Mr. Pearce failed to do

so. The Government filed a response indicating that a hearing was necessary to enable the Court to make a factual determination as to the credibility of whether Defendant instructed his counsel to file an appeal. (Doc. 46).

An evidentiary hearing was held on November 3, 2020. The matter is now ripe for consideration and the undersigned, being well and sufficiently advised, finds and recommends as follows:

## II. Testimony

### A. Carlos Pacheco

At the November 3, 2020 evidentiary hearing on his § 2255 Motion, Defendant testified, through a Spanish-speaking interpreter, that he understands a little bit of English, but cannot read in English. Defendant testified that Mr. Pearce, along with an interpreter, had met with him prior to his entering a guilty plea and had reviewed the Federal Sentencing Guidelines, but Defendant had not paid close attention. Defendant testified that he remembered Mr. Pearce told him his sentence would be low because of the points and that he would not get more than eighteen months. Defendant testified that a few days before his sentencing hearing, Mr. Pearce visited him. Defendant testified that he did not remember exactly what was discussed but he remembered Mr. Pearce told him he would get very little time. Defendant testified Mr. Pearce told him he may get time-served and then be sent to an immigration prison. Defendant testified that he did not remember if Mr. Pearce had told him that his guideline range was 57-71 months. Defendant testified that he did not discuss an appeal with Mr. Pearce because he thought he would get time-served.

Defendant testified that at the sentencing hearing, he remembered Judge Brooks

explaining the guideline range, and that he had told Judge Brooks his counsel had explained the guideline range to him. Defendant testified that he remembered telling Judge Brooks that no one promised him a specific sentence. When asked why he did not tell Judge Brooks he was told he would receive time-served, Defendant testified Mr. Pearce told him to keep quiet or court would shut down. Defendant testified that Mr. Pearce had told him to say no and that he thought Mr. Pearce had taken care of everything.

Defendant testified he would never forget being told that he was sentenced to 68 months. Defendant testified the sentence surprised both he and his family, as they all thought he would get time-served. Defendant testified that after the sentencing hearing he felt paralyzed and did not discuss anything with Mr. Pearce. Defendant testified that Mr. Pearce did not discuss his appeal rights after he was sentenced. Defendant testified that Mr. Pearce told him he would visit him in the jail in a couple of days but he never talked to Mr. Pearce again.

When asked how long he was at Washington County Detention Center after his sentencing hearing, Defendant testified he was not sure but thought seven to eight days. Defendant testified he was taken to a transfer facility in Oklahoma. Defendant testified that while he was in the facility in Oklahoma, he could not speak to his family or his attorney because he did not know how to use the phone and he also did not have money in his account. Defendant testified that after being transported to Atlanta, he was able to talk to his son and asked his son to contact Mr. Pearce about re-opening his case. Defendant testified that he did not know the dates his son called Mr. Pearce, but his son had left Mr. Pearce many messages, not emails, but messages. Defendant testified he sent letters to Mr. Pearce, using two different addresses, asking for documents. Defendant testified he also sent a letter to his attorney from a separate criminal matter seeking help with retrieving documents.

Defendant submitted three exhibits at the evidentiary hearing. The first exhibit was a letter dated May 20, 2019, written from Defendant to Mr. Pearce that indicated Defendant, and his family, had attempted to contact Mr. Pearce on numerous occasions with no response. (Def. Hearing Ex. 1). Defendant stated that despite promising he would do so, Mr. Peace never visited with Defendant at the jail after the sentencing to discuss an appeal. The second exhibit is a letter dated May 20, 2019, to Ms. Kimberly Weber, Defendant's counsel from the above mentioned previous criminal case, asking for help with a direct appeal in his criminal case currently before the Court. (Def. Hearing Ex. 2). The third exhibit is a letter dated August 12, 2019, from Defendant to Mr. Pearce stating that Defendant received a letter dated August 6, 2019, from Mr. Pearce that included a copy of the indictment but failed to include a copy of the notice of appeal. (Def. Hearing Ex. 3). Defendant stated that he had not received a response from Mr. Pearce about the filing of the notice of appeal.

### B. Charles W. Pearce

Mr. Pearce testified that he is a CJA panel attorney and was appointed to represent Defendant in the criminal case in question. Mr. Pearce testified that prior to Defendant pleading guilty, he, with the aide of an interpreter, discussed the statutory maximums in the plea agreement on each count. Mr. Pearce testified that he also provided Defendant with a guideline range estimate.

Mr. Pearce testified that on either April 11th or 12th, prior to the sentencing hearing, he, with the aide of an interpreter, went over the presentence report with Defendant. Mr. Pearce testified that he felt confident that Defendant understood the guideline range. Mr. Pearce testified that Defendant was hopeful he would get a sentence that would give him time-served, which would mean Defendant would be deported essentially from the Washington County

Detention Center to El Salvador. Mr. Pearce testified that he never promised Defendant a sentence of time-served but that he did feel it was likely that Defendant would get time-served, as he had been in custody, including his time for the prior case, for over a year at that point. Mr. Pearce explained that what he meant by time-served was that Defendant would get credit from the Bureau of Prisons for his time in custody but not necessarily that he would receive a time-served sentence.

Mr. Pearce testified that he discussed the appeal process with Defendant prior to the sentencing hearing. Mr. Pearce testified that he discussed with the Defendant that his previous criminal case could be used as relevant conduct and those facts could be used when determining a sentence in the case in question. Mr. Pearce testified that Defendant expressed concern about the previous criminal case. After having this discussion with Defendant prior to sentencing, Mr. Pearce testified Defendant expressed that he did not want to appeal because he knew his deportation was imminent.

When asked if he was surprised that Defendant's sentence was 68 months, Mr. Pearce testified that he was not surprised by the sentence but was surprised by some of the statements made by Judge Brooks regarding witness statements in Defendant's previous criminal case. Mr. Pearce testified that after the sentencing hearing, he had a quick discussion with Defendant about the appeal process. Mr. Pearce testified that this discussion consisted of now that you have been sentenced do you understand the sentence and do you want to appeal. At this point, Mr. Pearce testified Defendant told him he did not want to appeal.

Mr. Pearce testified that he had planned to visit Defendant at the Washington County Detention Center after the sentencing hearing and thought he told Defendant he would see Defendant in a couple of days. Mr. Pearce testified that he attempted to see Defendant at the

Washington County Detention Center on April 25th, but Defendant had already been transferred. Mr. Pearce testified that he did not feel like he needed to try to get in touch with Defendant because Defendant had told him he did not want to appeal. During the two weeks after Defendant was sentenced, Mr. Pearce testified that neither Defendant nor his family contacted him about an appeal. Mr. Peace testified that he felt confident that Defendant did not want to appeal, as he was not contacted by Defendant or his family.

When asked if he understood the obligation of counsel to explain the appeal process to a Defendant, Mr. Pearce testified that he let Defendant know Defendant could have an attorney on appeal and that the attorney might be him; that the attorney would need to file documents to appeal; and the time frame to appeal. When asked what he specifically discussed with Defendant, Mr. Pearce testified that before the sentencing hearing he discussed the appeal process. Mr. Pearce testified that the only specific issues discussed with Defendant were the relevant conduct from a prior criminal proceeding and a sentence above guideline range. Mr. Pearce testified that once Defendant was sentenced he did not have a conversation with Defendant about the merits or issues for an appeal. Mr. Pearce testified that he agreed that appeal rights are triggered once someone is sentenced. Mr. Pearce testified when he went to the jail after the sentencing hearing and discovered Defendant had been transported, he did not make any effort to contact Defendant to discuss issues for an appeal.

Mr. Pearce testified that he did not receive either the May or August of 2019, letters that Defendant testified he sent. Mr. Pearce testified that he received an email from Defendant's son in July of 2019 (Gov. Hearing Ex. 1), and based on that email sent Defendant all the documents that he could send to Defendant. Mr. Pearce testified that he also received an email in August of 2019 (Gov. Hearing Ex. 2), from Defendant's son saying thank you for sending the documents.

8

### III. Discussion:

#### A. Grounds For Relief

Defendant asserts ineffective assistance of counsel due to his trial counsel's failure to file a notice of appeal following his conviction. (Doc. 44).

#### B. Section 2255

Section 2255(a) allows "[a] federal prisoner in custody under sentence by a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Relief under [§] 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

#### C. Ineffective Assistance of Counsel – Failure to Appeal

Ineffective assistance of counsel claims generally require a defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced by this deficiency. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). However, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling a defendant to § 2255 relief, and no inquiry into prejudice or likely success on appeal is necessary. See Watson v. United States, 493 F.3d 960,

963-64 (8th Cir. 2007). For a defendant to succeed on such a claim, he must show that he made his desire to appeal evident to his attorney. See Yodprasit v. United States, 294 F.3d 966, 969 (8th Cir. 2002). "A bare assertion by the [defendant] that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000). A court is required to conduct an evidentiary hearing before making such factual determinations. See Watson, 493 F.3d at 964.

Where a defendant has not specifically requested an appeal, the reasonableness of counsel's conduct is judged by whether counsel had a duty to consult the defendant about the possibility of an appeal. This duty is triggered where there is reason to believe that a rational defendant would want to appeal or where the client has reasonably demonstrated an interest in appealing. See Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). The Supreme Court in Roe observed, "We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481. To show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. at 484.

In this case, it is uncontested that Mr. Pearce discussed Defendant's right to appeal prior to the sentencing hearing. What is contested is whether Mr. Pearce discussed with Defendant his right to appeal after Defendant was sentenced. Mr. Pearce testified that after the sentencing hearing, while he and Defendant were still in the courtroom, he discussed an appeal with Defendant and that Defendant told him he did not want to appeal. However, Defendant testified that Mr. Pearce did not discuss his appeal rights at the conclusion of the sentencing hearing.

10

Defendant testified that after the hearing he felt paralyzed and was unable to talk because he had expected to receive a time-served or lower sentence around 18 months, not 68 months. The Court finds Defendant's testimony that he did not discuss his right to appeal with Mr. Pearce after the sentencing hearing to be credible.

What this case turns on then is whether Mr. Pearce had a duty to consult with Defendant about the possibility of an appeal and whether he fulfilled that duty. Mr. Pearce knew that Defendant had hoped to receive a sentence of time-served or a lower sentence. After the sentencing hearing, Mr. Pearce conceded that he told Defendant that he would visit him at the jail in a few days but this visit never occurred because Defendant was transferred before Mr. Pearce went to see Defendant at the jail. Defendant testified that he was surprised by his sentence and felt paralyzed by it, as he thought he would receive time-served. Mr. Pearce acknowledged that he felt it was likely Defendant would receive time-served. While Mr. Pearce explained that what he meant by that was that Defendant would receive credit from the Bureau of Prisons for time-served, it appears that Defendant was under the impression that his sentence would be time-served, meaning his sentence would be completed by the time of sentencing and he would be immediately deported. Defendant further testified that he was under the impression that Mr. Pearce would visit him at the jail to discuss his appeal rights. The undersigned finds that the duty to consult with Defendant about an appeal was triggered, as there is reason to believe that a rational Defendant under these circumstances would want to appeal his sentence.

Having found that Mr. Pearce had a duty to consult with Defendant, the next question is whether Mr. Pearce fulfilled that duty. Mr. Pearce testified that before the sentencing hearing he discussed the appeal process. Mr. Pearce testified that the only specific issues discussed with Defendant were the relevant conduct from a prior criminal proceeding and a sentence above the

guideline range. Mr. Pearce acknowledged that appeal rights are triggered once someone is sentenced and that he did not have a conversation with Defendant about the merits or issues for an appeal after the sentencing hearing. Mr. Pearce testified when he went to the jail after the sentencing hearing and discovered Defendant had been transported, he did not make any effort to contact Defendant to discuss issues for an appeal. Based on the specific facts and circumstances in this case, the Court finds Mr. Pearce did not sufficiently consult with Defendant regarding the merits and issues for appeal. See U.S. v.Cong Van Pham, 722 F.3d 320, 324 (5th Cir. 2013) (finding counsel had not sufficiently consulted where, at most, "counsel discussed an appeal in the abstract and even then did so only *before* the sentence was pronounced," and, post-sentencing, counsel "neither mentioned the possibility of an appeal at all nor made any effort to discover the defendant's wishes in that regard); Dillard v. United States, No. 3:16-cr-116-L-2, 2019 WL 7759069, *3-4 (N. D. Tex. July 31, 2019), recommendation adopted as modified, 2020 WL 434472 (N. D. Tex. Jan. 28, 2020) (while counsel discussed with defendant his right to appeal *before sentencing*, counsel was ineffective in failing to consult with the defendant *post-sentencing* to ascertain whether the defendant desired to file an appeal or to discuss his disappointment with the length of his sentence and weigh the pros and cons of an appeal).

Having found that Mr. Pearce had a duty to consult with the Defendant about an appeal and that he did not fulfill that duty, the undersigned must next address whether the Defendant was prejudiced. As discussed above, Defendant testified that he felt paralyzed and was unable to talk after learning his sentence. Defendant also sent letters to Mr. Pearce in May and August of 2019, inquiring about his appeal. The undersigned has no doubt that Defendant would have appealed had he had the opportunity to consult with Mr. Pearce about the matter. The Defendant has, therefore, demonstrated prejudice as required by the standard set forth in Roe,

528 U.S. at 484.

## IV. Conclusion

Based on the foregoing, the undersigned concludes that Defendant is entitled to relief on his claim regarding Mr. Pearce's failure to appeal. Accordingly, Defendant is entitled to be re-sentenced. See Barger, 204 F.3d at 1182. The undersigned therefore recommends:

* Defendant's § 2255 motion should be GRANTED.

* Defendant's sentence should be vacated and a new sentencing hearing should be scheduled. The time for Defendant to appeal will then run from that date.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court**.

DATED this 20th day of April 2021.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE